FILED

2016 Oct-13  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **THE JEFFERSON COUNTY** | } | |
| **BOARD OF EDUCATION,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  2:14-cv-01064-MHH** |
| **v.** | } | |
| | } | |
| **BRYAN M. AND DARCY M.,** | } | |
| **individually and as parents,** | } | |
| **guardians, next friends and legal** | } | |
| **representatives of R.M., a minor,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

### I.      Introduction

This administrative appeal of an IDEA decision is before the Court on the suggestion of the Jefferson County Board of Education that Bryan and Darcy M.'s counterclaim for attorneys' fees is moot.  (Doc. 25).  The Board asks the Court to dismiss the counterclaim for lack of jurisdiction and vacate the underlying administrative order.  (Doc. 25, ¶¶ 6–7).  In their response to the Board's motion, Bryan and Darcy argue that the Board's appeal is moot, but their claim for fees is viable and well-founded.  (Doc. 27).  Bryan and Darcy ask the Court to affirm the "findings and conclusions" in the underlying administrative order and award fees

pursuant to 20 U.S.C. § 1415.  (Doc. 9, p. 26; Doc. 27).  In this opinion, the Court examines and resolves the parties' cross-motions for relief.

## II.    Statutory Framework

Bryan and Darcy's son, R.M., has been diagnosed with learning and behavioral disorders.  (Doc. 9, ¶ 6).  Under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–82, R.M. is entitled to a "free appropriate public education."  20 U.S.C. §§ 1400(c)(3); 1412(a)(1).  To facilitate appropriate educational services for a public school student who qualifies for protection under the IDEA, Congress mandated the creation of an individualized education program or IEP for the student.  20 U.S.C. § 1412(a)(4).  An IEP is created by an IEP team, which must include the parents of the child.  The IEP must describe the student's academic status, set goals for the child's progress, and identify special education or other services and accommodations that a public school system must provide to help the student reach the goals stated in the IEP. 20 U.S.C. § 1414(d).  An IEP team must review a "child's IEP periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved."  20 U.S.C. § 1414(d)(4)(A)(i).

A student protected by the IDEA must receive IDEA services in the "least restrictive environment."  20 U.S.C. § 1412(a)(5).  An IEP must identify a child's least restrictive environment.  20 U.S.C. § 1436(d)(5).  A parent may challenge the

least restrictive environment designation in an IEP.  When a parent does so, the IDEA's "stay-put" provision states that "the child shall remain in the then-current educational placement" during the due process proceedings.  20 U.S.C. § 1415(j).

## III.   Procedural and Factual Background

During the 2010–2011 school year, the Jefferson County Board of Education prepared an IEP for R.M.  The IEP placed R.M. at his community school, Mount Olive Elementary.  (Doc. 16-15, p. 10).  After R.M. encountered challenges with staff, administrators, and other students at Mount Olive, the Board transferred him to Brookville Elementary School for a portion of the 2010–2011 school year.  R.M. attended Brookville Elementary for the entire 2011–2012 school year.  (Doc. 16-15, pp. 10–11).

At the request of his parents, R.M. received an administrative placement at Snow Rogers Elementary for the 2012–2013 school year.  (Doc. 16-15, pp. 12–14).

R.M.'s 2013–2014 IEP identified Brookville as R.M.'s least restrictive environment.  (Doc. 16-15, p. 41).  Bryan and Darcy objected to R.M. returning to Brookville and filed a request for a due process hearing to challenge the determination that Brookville was R.M.'s least restrictive environment.  (Doc. 16-15, p. 42).  In their due process complaint, Bryan and Darcy alleged that the school district developed an inappropriate behavior intervention plan for R.M., failed to provide speech language and occupational therapy to R.M., and refused to treat

3

them (Bryan and Darcy) as equal partners in the development of their son's IEP. (Doc. 16-15, pp. 1–3, 6). Bryan and Darcy sought an independent educational evaluation of R.M. at the expense of the school district. (Doc. 16-15, p. 2).

Bryan and Darcy invoked the "stay-put" provision of the IDEA, but the parties disagreed about whether R.M.'s "current educational placement" was Snow Rogers or Brookville when Bryan and Darcy filed their due process complaint. (Doc. 29, pp. 8–12). The hearing officer presiding over the case concluded that the stay-put provision required R.M. to remain at Snow Rogers. (Doc. 16-17, p. 36). The hearing officer reasoned that to hold otherwise would allow a school district to "avoid the application of the maintenance placement rule simply by proposing a new individualized education program." (Doc. 16-17, p. 36). In accordance with the stay-put order, R.M. attended Snow Rogers at the start of the 2013–2014 school year; Bryan and Darcy withdrew R.M. from Snow Rogers on January 21, 2014 and enrolled him in a church school. (Doc. 16-15, pp. 7–8).

The hearing officer began the administrative hearing in this matter in August 2013. At the conclusion of the due process hearing in March 2014, the hearing officer made the following specific findings favorable to R.M.:

> (1) 'A procedural violation of the IDEA occurred when the school system predetermined the child's placement to a more restrictive environment at the May 23, 2013 IEP meeting. That predetermination precluded Petitioner's parents [sic] active participation in their son's educational program. 20 U.S.C. § 1415(f)(3)(E)(ii)(II).' (Doc. 16-15, pp. 69–70).

4

(2) R.M.'s behavior plan was not appropriately implemented.  The hearing officer directed the school district 'to provide training to staff at Snow Rogers - specifically the principal, special education teacher and Petitioner's general education teachers at that school - on the implementation of Petitioner's behavior plan.'  (Doc. 16-15, p. 70). The hearing officer also required the school district to 'supply evidence of that training to Petitioner's parents and their counsel.' (Doc. 16-15, p. 70).

(3) The school district violated R.M.'s right to receive educational services in his least restrictive environment. (Doc. 16-15, p. 70). The hearing officer ordered that R.M.'s placement at Snow Rogers continue for the remainder of the 2013–2014 school year.  The hearing officer instructed the school district to have R.M.'s IEP team, at the end of the academic year, determine R.M.'s least restrictive environment and 'consider returning Petitioner to his zoned school. 34 CFR § 300.116(b)(3).'  (Doc. 16-15, pp. 70–71).

In compliance with the hearing officer's order, the Board conducted a training session for Snow Rogers staff on May 9, 2014 and provided evidence of the training to Bryan, Darcy, and their counsel.  (Doc. 25-1, p. 4).  On July 29, 2014, the Board held an IEP meeting at Mount Olive to determine R.M.'s placement for the 2014–2015 school year.  (Doc. 25-1, p. 2).  The IEP team agreed that Mount Olive was R.M.'s least restrictive environment.   "Following the meeting, Mrs. M. registered R.M. at Mt. Olive Elementary School but withdrew him again on August 4, 2014.  The 2014–2015 school year for students began on August 6, 2014."  (Doc. 25-1, p. 2).  "The Board of Education has received no indication from R.M.'s parents or attorneys that he intends to re-enroll in Jefferson

County schools or in any public school." (Doc. 25, ¶ 3; *see also* Doc. 27, pp. 11–12).

The Board filed a complaint in this Court to challenge the hearing officer's decision. (Doc. 1). The Board asks the Court to set "aside and hold[] for naught the findings and relief set forth in the hearing officer's order . . . and all orders antecedent thereto that were adverse to the Board." The Board also seeks to recover its costs in this matter and asks the Court to provide the Board "such other relief as may be appropriate." (Doc. 1, pp. 8–9).

R.M.'s parents answered the complaint and filed a counterclaim. (Doc. 9). R.M.'s parents ask the Court to affirm the "findings and conclusions" of the hearing officer and award attorneys' fees under 20 U.S.C. § 1415. R.M.'s parents also ask the Court to declare that the Board's policies and practices violate the IDEA, to enjoin the Board from violating their rights and R.M.'s rights under the IDEA, and to provide such other relief "as the Court deems appropriate." (Doc. 9, pp. 26–27).

## IV.    Discussion

### A.    Mootness

"The rule that federal courts may not decide cases that have become moot derives from Article III's case and controversy requirement." *Sierra Club v. U.S. E.P.A.*, 315 F.3d 1295, 1299 (11th Cir. 2002). The "'case-or-controversy

requirement subsists through all stages of federal judicial proceedings, trial and appellate,'" and a case that initially presented a live controversy later may become moot, causing the federal trial or appellate court presiding over the case to lose jurisdiction. *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1363 (11th Cir. 2006) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

To determine whether a case is moot, a court must examine whether "'the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *T.P. ex rel. T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d 1284, 1292 (11th Cir. 2015) (quoting *BankWest*, 446 F.3d at 1364).  This may happen "'when, by virtue of an intervening event,'" a court "'cannot grant any effectual relief whatever.'"  *United States v. Sec'y, Florida Dep't of Corr.*, 778 F.3d 1223, 1228 (11th Cir. 2015) (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996)).

## 1.    Mootness of the Administrative Due Process Proceeding

The Board contends that the administrative proceeding before the hearing officer became moot when Bryan and Darcy decided to withdraw R.M. from the county public school system and place him in a private school.  (Doc. 25, pp. 6–7).  The Board asks the Court to dismiss Bryan and Darcy's counterclaim and vacate the hearing officer's decision.  (*Id.*).  Because the hearing officer was able to provide effectual relief before Bryan and Darcy withdrew R.M. from Snow

Rogers, the administrative proceeding was not moot.  *See Florida Dep't of Corr.*, 778 F.3d at 1228.

Before R.M.'s parents moved him prom public school to private school, the hearing officer resolved a host of issues in the administrative proceeding.  For R.M.'s benefit, the hearing officer ordered the school district to train the staff at Snow Rogers on the implementation of R.M.'s behavior plan and provide evidence of that training to R.M.'s parents and their counsel.  The district complied.  The hearing officer also required the district to maintain R.M.'s placement at Snow Rogers for the 2013–2014 school year, per the IDEA's "stay put" provision, and directed the IEP team to reconsider its conclusion that Brookville was R.M.'s least restrictive environment.  (Doc. 16-15, pp. 70–71).  Again, the district complied.

In a finding unfavorable to Bryan and Darcy, the hearing officer refused their request to have the Jefferson County public school district pay for a functional behavioral assessment of R.M.  (Doc. 16-15, p. 71).[1]  The hearing officer also denied Bryan and Darcy's request for compensatory education.  *See R.W. v. Georgia Dep't of Educ.*, 353 Fed. Appx. 422, 423 (11th Cir. 2009) (finding that even after appellant's claims to equitable relief became moot, claims for reimbursement or compensatory education would have remained viable if properly

---

[1] The hearing officer expressed some doubt regarding whether the request for a functional behavioral assessment was properly raised in the due process complaint but concluded that the claim was sufficiently presented to warrant a formal denial.  (Doc. 16-15, pp. 71–72).

presented).[2]  Moreover, the hearing officer consolidated the Board's request for a due process hearing with the due process hearing that Bryan and Darcy requested and found that R.M. had been appropriately evaluated during the creation of his IEP.  As a result, the Board did not have to provide an independent educational evaluation for R.M. at public expense.  (Doc. 16-15, pp. 3–4, 6, 7, 49–50).

In short, the due process proceedings were not moot because the hearing officer's decision did "'affect the rights of litigants in the case before'" him. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *N. Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

## 2.    Mootness of this Appellate Proceeding

### a.    The Board's Claims

On appeal, the Board seeks relief from the rulings of the hearing officer that were favorable to Bryan and Darcy.  Specifically, the Board asks the Court to "[set] aside and hold[] for naught the findings and relief set forth in the hearing officer's order of April 15, 2013 and all orders antecedent thereto that were

---

[2] The parties agree that a claim for compensatory education was brought before the hearing officer.  (Doc. 29, p. 6) ("Specific compensatory education was sought in the due process complaint and in the defendant's post hearing brief.  However, that relief was not granted by the hearing officer and his failure to do so was not appealed by defendants.") (footnotes omitted); (Doc. 27, p. 7) ("Here, in contrast, R.M. sought equitable relief in the form of placement in his least restrictive environment, teacher training, and compensatory education.").

adverse to the Board."[3]  (Doc. 1, p. 8).  The Board also requests an award of its costs and "such other relief as may be appropriate."  (Doc. 1, p. 9).  The Court cannot provide effectual relief to the Board because the Court cannot undo the work that the Board already has undertaken to comply with the hearing officer's instructions.

As noted above, the primary relief that the hearing officer provided to Bryan and Darcy imposed an obligation upon the Board to train school district staff and to reconsider R.M.'s least restrictive environment.  (Doc. 16-15, pp. 70–71).  The Board conducted training for both Snow Rogers and Mount Olive staff on May 9, 2014 and provided evidence of the Board's compliance to counsel for R.M. and his parents.  (Doc. 25-1, p. 4).  R.M.'s IEP team met on July 29, 2014 and determined that Mount Olive, not Brookville, was R.M.'s least restrictive environment for the 2014–2015 school year.  (Doc. 25-1, p. 2).

As a practical matter, a decision from this Court invalidating the administrative rulings that were adverse to the Board would not provide meaningful relief to the Board.  The Court cannot "untrain" the staff at Snow Rogers and Mount Olive, even if such a result were desirable, or prevent an IEP meeting that already has taken place from occurring.  Although vindication of its

---

[3] The hearing officer's order is erroneously dated the "15th day of April 2013."  (Doc. 16-15, p. 73).  That date is not correct because Bryan and Darcy did not submit a due process hearing request until July 2013.  (Doc. 16-15, p. 1).  Also, as previously mentioned, the due process hearing began in August 2013 and was completed in March 2014.  (Doc. 16-15, p. 5).  The Court understands the hearing officer's order to have been issued on April 15, 2014.

legal position might afford some intangible benefit to the Board, the "moral satisfaction [that] presumably results from any favorable statement of law" is not a form of "relief" the Court is authorized to provide unless it is accompanied by the resolution of a case or controversy that supplies a basis for the exercise of jurisdiction. *See Hewitt v. Helms*, 482 U.S. 755, 762 (1987). Because the hearing officer's order requiring the Board to take certain actions has been satisfied, "it no longer has legal effect on the parties, and a decision by this court affirming or vacating the defunct injunction 'cannot affect the rights of [the] litigants.'" *Sec'y, Florida Dep't of Corr.*, 778 F.3d at 1229 (quoting *DeFunis*, 416 U.S. at 316).

The Board argues that *Nat'l Broadcasting Co. v. Communications Workers of America* stands for the proposition that "[c]ompliance with [an] expired injunction does not moot [a] defendant's appeal." (Doc. 29, p. 15 n. 23) (citing *Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022 (11th Cir. 1988)). The Court disagrees.

In *Nat'l Broadcasting Co.*, the Communications Workers of America (CWA) sought to exclude a television network from a convention at which several candidates for president were scheduled to speak. 860 F.2d at 1022–23. A federal district court issued a temporary restraining order that prohibited the CWA from singling out a particular media organization for exclusion. *Id.* at 1023. The CWA

complied with the court's order by barring all media organizations from the convention and then appealed the order to the Eleventh Circuit.  *Id.*

On appeal, the Eleventh Circuit reasoned that "[b]ecause the convention has ended and the TRO has expired, we must find the case moot unless it falls within one of the exceptions to the mootness doctrine."  860 F.2d at 1023.  The Eleventh Circuit found that the *Nat'l Broadcasting Co.* appeal fell within the first exception to the mootness doctrine which permits review of an otherwise moot issue that "is capable of repetition, yet evades review."  *Id.* at 1024.  Therefore, the Court did not dismiss the appeal under the mootness doctrine.

In contrast to the CWA, the Board has not presented an argument that this case falls within an exception to the mootness doctrine.  To the contrary, the Board notes that R.M.'s parents have withdrawn him from the Jefferson County public school system, "never to return."  (Doc. 29, pp. 9–10).  It appears, then, that Bryan and Darcy have terminated their relationship with the public school district. Therefore, *Nat'l Broadcasting Co.* does not breathe life into the Board's moot appeal.

### b.     Bryan and Darcy's Counterclaim

Bryan and Darcy ask the Court to "affirm the findings and conclusion of the administrative law judge," declare that the Board has violated the IDEA, enjoin the

Board from further violations of the IDEA, and award Bryan and Darcy attorneys' fees under 20 U.S.C. § 1415. (Doc. 9, pp. 26–27).

Bryan and Darcy's attempt to have this Court affirm the rulings of the administrative law judge that were favorable to them and enjoin the Board from future IDEA violations is unavailing. Although "an appeal brought by a prevailing party may satisfy Article III's case-or-controversy requirement," *Camreta v. Greene*, 563 U.S. 692, 702 (2011), courts generally decline the invitation to hear such cases "even when the Constitution allow[s] [a court] to do so." *Id.* at 704. The Court does not hesitate to follow that general rule in this case because confirmation of the hearing officer's findings would not alter the legal relationship between R.M.'s parents and the Board now that R.M.'s parents have removed him from the public school system. (*See* Doc. 27, p. 9). Therefore, Bryan and Darcy's claims for affirmance and declaratory and injunctive relief are moot. *See Sec'y, Florida Dep't of Corr.*, 778 F.3d at 1229.

Bryan and Darcy's counterclaim for attorneys' fees, though of a different character from their other claims, will not save this action from mootness because an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim . . . ." *Lewis*, 494 U.S. at 480. However, the Court is not barred from awarding attorneys' fees because of the mootness of the underlying claim. *See Dunn v. The Florida*

*Bar*, 889 F.2d 1010, 1013 (11th Cir. 1989) (evaluating plaintiffs' claim for attorneys' fees after the plaintiffs voluntarily dismissed their case in response to the defendants' remedial action). "Thus a determination of mootness neither precludes nor is precluded by an award of attorneys' fees." *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980).[4]  Instead, the mootness of the current action limits Bryan and Darcy's claim for attorneys' fees to the due process proceedings. *See Thomas v. Bryant*, 614 F.3d 1288, 1294 n. 3 (11th Cir. 2010) ("We note, however, that where, as here, a controversy is mooted before a Court of Appeals issues a judgment, a party cannot be considered a 'prevailing party' at the appeals stage, so as to recover attorneys' fees for the cost of appellate litigation under § 1988's fee-shifting statute.").  The Court will rule on Bryan and Darcy's request for attorneys' fees after determining whether the mootness of this action warrants an order vacating the hearing officer's decision.

**B.    Vacatur**

The Board asks the Court to vacate the "underlying administrative order" in this action.  (Doc. 25, pp. 6–7).  The "well-established practice" in the Eleventh Circuit is to vacate the lower court's order when an appeal is dismissed as moot and review of the lower court's judgment "'was prevented through happenstance.'"

---

[4] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.").

*BankWest*, 446 F.3d at 1368 (quoting *Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1243 (11th Cir. 2002)).   "[H]appenstance," the Supreme Court has explained, refers to "circumstances not attributable to the parties . . . ." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997).  Alternatively, an appellate court may vacate a lower court's judgment "when mootness results from unilateral action of the party who prevailed below."   *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994).

"The policy of vacating the underlying judgment is premised on the equitable principle that a party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."  *Soliman*, 296 F.3d at 1243–44 (quoting *Atlanta Gas Light Co. v. F.E.R.C.*, 140 F.3d 1392, 1403 (11th Cir. 1998)).  Administrative orders should not be "automatically" vacated in every case in which "intervening mootness" prevents review, but only when vacatur serves that equitable principle. *Westmoreland v. Nat'l Transp. Safety Bd.*, 833 F.2d 1461, 1463 (11th Cir. 1987). "The principal condition to which [courts] have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp Mortgage Co.*, 513 U.S. at 24.

In this action, R.M.'s withdrawal from Jefferson County schools and the Board's satisfaction of the obligations imposed by the hearing officer have

combined to render the matter moot.  In circumstances where parties share joint responsibility for the unavailability of review, "the party seeking relief from the status quo . . . [must] demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur."  *Id.* at 26.  The Board has neither demonstrated that it is entitled to the "extraordinary remedy of vacatur" nor established "that the administrative order will have any real continuing effect . . . ."  *Westmoreland*, 833 F.2d at 1463.  Therefore, the Court will not vacate the hearing officer's decision.

### C.    Attorneys' Fees

Under 20 U.S.C. § 1415(i)(3)(B), a court "may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability . . . ."  The "analysis of the 'prevailing party' standard under section 1988 is 'generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"  *Barnes v. Broward Cty. Sheriff's Office*, 190 F.3d 1274, 1277 n. 1 (11th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  This IDEA case is no exception to that rule.

"Under [the Supreme Court's] generous formulation of the term, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (internal

quotation marks omitted) (quoting *Hensley*, 461 U.S. at 433).  "Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.  Otherwise the judgment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff."  *Barnes*, 190 F.3d at 1278 (quoting *Farrar*, 506 U.S. at 111).  An award of nominal damages will support prevailing party status because the award constitutes a material alteration of the legal relationship between the parties.  *Farrar*, 506 U.S. at 112–13.

Bryan and Darcy contend that R.M.'s continued attendance at Snow Rogers, rather than Brookville, during the course of the due process hearing is sufficient to render them prevailing parties.  (Doc. 27, p. 14 n. 1).  Generally, stay-put relief of the kind secured by Bryan and Darcy "will not support an attorneys' fees award because it is not merits-based."  *Robert v. Cobb Cty. Sch. Dist.*, 279 Fed. Appx. 798, 801 (11th Cir. 2008).  However, in this case the parties made substantive arguments regarding the correct application of the IDEA's stay-put provision that required the hearing officer to make a decision on the merits.

Although the Board characterizes the hearing officer's stay-put order as "an automatic injunction" that simply served "to maintain the status quo," the Board's litigation of the issue of R.M.'s proper placement during the administrative proceedings undermines the Board's current contention that the order was automatic.  (Doc. 29, p. 10).  Under the Board's interpretation of the

stay-put provision, R.M. would have attended Brookville while the due process hearing was underway.  (Doc. 29, p. 11 n. 18).[5]  Bryan and Darcy maintained, and the hearing officer agreed, that R.M.'s then-current educational placement was Snow Rogers.  (Doc. 29, p. 11 n. 17; Doc. 27, pp. 14–15).  The hearing officer examined and interpreted the IDEA to resolve the placement disputes.  Because Bryan and Darcy prevailed in a legal dispute concerning the application of a provision of the IDEA, the Court finds they are prevailing parties for the purposes of an award of attorneys' fees.

The Supreme Court's holding in *Sole v. Wyner*, which the Board describes as "instructive and controlling," does not compel a contrary conclusion.  (Doc. 29, p. 13).  *Sole v. Wyner* addressed the question: "Does a plaintiff who gains a preliminary injunction after an abbreviated hearing, but is denied a permanent injunction after a dispositive adjudication on the merits, qualify as a 'prevailing party' within the compass of § 1988(b)?"  *Sole v. Wyner*, 551 U.S. 74, 77 (2007).  The Supreme Court held that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case."  *Id.* at 83.

---

[5] It is worth noting that the Board's decision to move R.M. from Snow Rogers to Brookville precipitated the due process complaint filed by Bryan and Darcy.  Accepting the Board's interpretation of the IDEA would enable school districts to unilaterally change students' IEPs and maintain children in disputed placements while the children's parents attempt to vindicate their child's rights under the IDEA.  The hearing officer accepted Bryan and Darcy's alternative interpretation of the IDEA and rejected the Board's approach to stay put orders.

The holding in *Sole v. Wyner* does not apply to the litigation of R.M.'s stay-put placement for at least two reasons. First, unlike the initial injunction in *Sole v. Wyner*, the hearing officer's determination was not preliminary but rather was a threshold issue that the hearing officer necessarily addressed and resolved early in the administrative proceedings. Second, at the conclusion of the due process hearing, the hearing officer ordered that R.M. remain at Snow Rogers for the remainder of the 2013–2014 school year. (Doc. 16-15, p. 70). Thus, the stay-put order was not "reversed, dissolved, or otherwise undone by the final decision in the same case."

In addition to Bryan and Darcy's success on the issue of R.M.'s stay-put placement, the Court finds that other adequate bases exist for awarding attorneys' fees to Bryan and Darcy for the efforts expended by their counsel during the due process proceedings. The hearing officer identified "whether the school system's proposed placement of the Petitioner for the 2013-2014 school year violated the child's right to be served in his least restrictive environment" as the "primary issue for consideration." (Doc. 16-15, p. 6). On this "primary issue," the hearing officer determined that the "local education agency violated Petitioner's right to be served in his least restrictive environment." (Doc. 16-15, p. 70). The hearing officer also found that the Board committed a procedural violation of the IDEA by predetermining R.M.'s placement in his 2013 IEP. (Doc. 16-15, pp. 69–70). The

procedural violation prevented R.M. from receiving a free appropriate public education because his parents were precluded from "active participation in their son's educational program."   (Doc. 16-15, pp. 48, 70); *see also* 20 U.S.C. § 1415(f)(3)(E)(ii)(II).

On both issues, Bryan and Darcy prevailed and were awarded relief including the continuation of R.M.'s placement at Snow Rogers during the 2013–2014 school year and the reconsideration of Brookville as R.M.'s least restrictive environment.   (Doc. 16-15, pp. 70–71).   At an IEP meeting on July 29, 2014, R.M.'s IEP team determined that Mount Olive was R.M.'s least restrictive environment for the 2014–2015 school year.   (Doc. 25-1, p. 2).   The participation of R.M.'s mother in that meeting and the consensus that was reached represent the kind of meaningful parental involvement in the decision-making process that the IDEA requires.   *See* 20 U.S.C. § 1415(f)(3)(E)(ii).   Following the meeting, R.M.'s parents registered him at Mount Olive, but he was withdrawn again before the school year started.   (Doc. 25-1, p. 2).

Although the benefits to R.M. and his parents from the hearing officer's decision would have been greater if R.M. had remained enrolled at Snow Rogers during the 2013–14 school year and attended Mount Olive for the 2014–15 school year, the Court finds that the benefits realized were more than nominal.   The Supreme Court has recognized that the "IDEA, through its text and structure,

creates in parents an independent stake not only in the procedures and costs implicated by this process but also in the substantive decisions to be made." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007). As a result of the hearing officer's findings, R.M. was free to—and did—enroll at Mount Olive. Later, when R.M.'s parents were deciding where R.M. would attend school in 2014–2015, the hearing officer's decision gave them a choice between private school and Mount Olive, rather than Brookville. Because R.M.'s parents seemed to view Brookville as a less desirable—if not unacceptable—alternative, the Court cannot say that the choice provided by the hearing officer had no value to R.M.'s parents.[6]

## V.    Conclusion

For the reasons stated above, the Court **DISMISSES** the Board's claims **WITH PREJUDICE**. With the exception of the claim for attorneys' fees, the Court **DISMISSES** Bryan and Darcy's claims **WITH PREJUDICE**.

**On or before October 27, 2016**, Bryan and Darcy shall submit to the Court evidence of their attorneys' fees attributable to the due process proceedings. The Board may respond with arguments for limiting those fees **on or before**

---

[6] R.M.'s parents' decision to withdraw him from Mount Olive may impact the amount of fees that Bryan and Darcy may recover, but it does not impact the threshold issue of the availability of fees.

**November 7, 2016**.  Bryan and Darcy may reply **on or before November 14, 2016**.

       **DONE** and **ORDERED** this October 13, 2016.

                        _____

                        **MADELINE HUGHES HAIKALA**
                        UNITED STATES DISTRICT JUDGE